IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 18-00010 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN D. WALKER, | ) |
| aka JON WALKER, | ) |
| MARVIN R. REED, | ) |
| KENNETH R. CROWE, | ) |
| PHILLIP T. KAPP, | ) |
| | ) |
| _____ Defendants. | ) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHAEL J. BORDALLO,
MAGISTRATE JUDGE
(Via telephone)
MAY 6, 2020; 9:00 A.M.
HAGATNA, GUAM

**Motion Hearing on an Amended Motion for Hearing to Address**      09:01:50AM
**Potential Conflict of Interest and a Motion for Protective**      09:01:54AM
**Order, Prevent Removal of Evidence, Schedule Inspection,**      09:01:58AM
**Prevent Harassment of Witnesses**      09:02:01AM

Proceedings recorded by *mechanical stenography*.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: STEPHEN LEON GUERRERO, AUSA** (via telephone)
**MARIE MILLER, SAUSA** (via telephone)
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of Defendant Walker:


**LAW OFFICE OF JAMES M. MAHER**
**BY: JAMES M. MAHER, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 300, DNA Building
Hagatna, Guam 96910
(671) 477-7892

**BY: MACK K. MARTIN, ESQ.** (via telephone)
125 Park Avenue, 5th Floor
Oklahoma City, OK 73102


Appearing on behalf of Defendant Reed:

**LAW OFFICE OF PETER C. PEREZ**
**BY: PETER C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

Appearing on behalf of Defendant Crowe:

**LAW OFFICE OF LUJAN & WOLFF**
**BY: DAVID J. LUJAN, ESQ.** (via telephone)
238 Archbishop Flores Street

**LAW OFFICE OF GREGORY NICOLAYSEN**
**BY: GREGORY NICOLAYSEN, ESQ.** (via telephone)
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
(818) 970-7247

Appearing on behalf of Defendant Kapp:

**LAW OFFICE OF ANTHONY C. PEREZ**
**BY: ANTHONY C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

**BY: EDWARD A. MCCONWELL, ESQ.,** (via telephone)
**LAURA L. MCCONWELL, ESQ.** (via telephone)
5201 Johnson Drive, Suite 300
Mission, KS 66205

Appearing on behalf of Defendant Hansen:

**LAW OFFICE OF EDWARD C. HAN**
**BY: EDWARD C. HAN, ESQ.** (via telephone)
378 Sara Street
Purple Heart Highway
Maite, GU 96910
(671)477-9219

Appearing on behalf of Defendant Rogers:

**LAW OFFICE OF GUMATAOTAO & POLE**
**BY: WILLIAM B. POLE, ESQ.** (via telephone)
Suite 301, San Ramon Building
115 San Ramon Street
Hagatna, GU 96910
(671)475-0200

ALSO PRESENT:

John Walker, Defendant (via telephone)

Marvin Reed, Defendant (via telephone)

Kenneth Crowe, Defendant (via telephone)

Phillip Kapp, Defendant (via telephone)

Viranousith Khamvongsa, IRS agent (via telephone)
-------------------------------------------------
I N D E X

Page

Court to take matters under advisement and
issue decision shortly                          38

| | | |
|---|---|---|
| 1 | May 6, 2020; 9:01 a.m.; Hagatna, Guam | 09:00AM |
| 2 | * * * | 09:00AM |
| 3 | THE CLERK:  Your Honor, all the parties are | 09:01AM |
| 4 | present. | 09:01AM |
| 5 | THE COURT:  All right, go ahead and call the case | 09:01AM |
| 6 | then. | 09:01AM |
| 7 | THE CLERK:  Okay, Your Honor.  Come to order, the | 09:01AM |
| 8 | District Court of Guam is now in session, the Honorable | 09:01AM |
| 9 | Michael J. Bordallo presiding on Criminal Case 18-00010, *USA* | 09:01AM |
| 10 | *versus John D. Walker, Marvin R. Reed, Kenneth R. Crowe,* | 09:01AM |
| 11 | *Phillip T. Kapp, Randall Rogers, and Hansen Helicopters* on a | 09:01AM |
| 12 | Motion Hearing on an Amended Motion for Hearing to Address | 09:01AM |
| 13 | Potential Conflict of Interest and a Motion for Protective | 09:01AM |
| 14 | Order, Prevent Removal of Evidence, Schedule Inspection, | 09:01AM |
| 15 | Prevent Harassment of Witnesses. | 09:02AM |
| 16 | Counsels, please state your appearance, starting | 09:02AM |
| 17 | with the government.  And we'll go from Defendant 1 all the | 09:02AM |
| 18 | way down.  Thank you. | 09:02AM |
| 19 | MR. LEON GUERRERO:  Buenas and hafa adai, Your | 09:02AM |
| 20 | Honor, this is Assistant U.S. Attorney Stephen Leon Guerrero. | 09:02AM |
| 21 | Also present with me is IRS Agent Sith Khamvongsa.  Also | 09:02AM |
| 22 | present is co-counsel, Special Assistant U.S. Attorney Marie | 09:02AM |
| 23 | Miller. | 09:02AM |
| 24 | MS. MILLER:  Hafa adai, Your Honor. | 09:02AM |
| 25 | THE COURT:  Hafa adai. | 09:02AM |

```
 1              MR. MARTIN:  Your Honor, this is Mack Martin.  I        09:02AM

 2   represent John Walker.  I'm getting him on the other line.  I      09:02AM

 3   had accidentally disconnected him, but he'll be on the phone       09:02AM

 4   in just a moment.                                                  09:02AM

 5              THE COURT:  And is local Counsel, Jim Maher, also       09:02AM

 6   on or is it just you, Mr. Martin?                                  09:02AM

 7              MR. MARTIN:  Mr. Maher is on.                           09:02AM

 8              THE COURT:  Okay.  All right, thank you.                09:02AM

 9              MR. PEREZ:  Good morning, Your Honor, Peter Perez       09:02AM

10   present with Mr. Reed by telephone.                                09:02AM

11              THE COURT:  Okay.  Thank you.                           09:03AM

12              MR. LUJAN:  Good morning, Your Honor, -- Lujan          09:03AM

13   and, you know, and also on the phone is Gregory Nicolaysen on      09:03AM

14   behalf of Rufus Crowe and Mr. Nicolaysen will be arguing on       09:03AM

15   behalf of Mr. Crowe.                                               09:03AM

16              MR. NICOLAYSEN:  Good morning, Your Honor, Greg         09:03AM

17   Nicolaysen here from Los Angeles.                                  09:03AM

18              MR. POLE:  Attorney William Pole, Your Honor --        09:03AM

19   go ahead.                                                          09:03AM

20              THE COURT:  Go ahead, go ahead.                         09:03AM

21              MR. POLE:  William Pole, Your Honor, on behalf of       09:03AM

22   Randall Rogers.  He's in Georgia.                                  09:03AM

23              THE COURT:  Okay.                                       09:03AM

24              MR. MCCONWELL:  Edward McConwell, Laura McConwell       09:03AM

25   on behalf of Phillip Kapp, and Mr. Perez is on the phone too.     09:03AM
```

|   |   |   |
|---|---|---|
| 1 | (Pause.) | 09:03AM |
| 2 | THE COURT:  All right. | 09:03AM |
| 3 | MR. HAN:  This is Ed Han for Hansen Helicopters. | 09:03AM |
| 4 | THE COURT:  Okay, and Mr. Nicolaysen, on behalf | 09:03AM |
| 5 | of Mr. Lujan, has Mr. Nicolaysen filed his pro hac vice in | 09:03AM |
| 6 | this case already? | 09:04AM |
| 7 | MR. NICOLAYSEN:  Yes, Your Honor, it was done two | 09:04AM |
| 8 | years ago. | 09:04AM |
| 9 | THE COURT:  Okay.  All right.  So he -- I haven't | 09:04AM |
| 10 | seen but I saw -- all right.  Thank you.  All right.  Let's go | 09:04AM |
| 11 | for the first matter before the Court is the amended motion | 09:04AM |
| 12 | for a hearing to address potential conflicts and what I don't | 09:04AM |
| 13 | need is I don't need a repeat of anything that's contained in | 09:04AM |
| 14 | the briefs. | 09:04AM |
| 15 | So beginning with the government, is there | 09:04AM |
| 16 | anything in addition to what's been filed that you wish the | 09:04AM |
| 17 | Court to be aware of? | 09:04AM |
| 18 | MR. LEON GUERRERO:  Yes, yes, Your Honor.  Thank | 09:04AM |
| 19 | you.  Stephen Leon Guerrero.  So really, in addition to, you | 09:04AM |
| 20 | know, the arguments that were raised in our filing, it has | 09:04AM |
| 21 | come to our attention that there is in fact a joint defense | 09:04AM |
| 22 | agreement amongst the defendants and that was something we | 09:04AM |
| 23 | weren't aware of or sure of when we initially filed this | 09:04AM |
| 24 | motion, and because we've been made aware of that, you know, | 09:04AM |
| 25 | we're simply asking the Court to make sure that there's no, | 09:05AM |

1   you know, potential for conflict of interest in any way to be          09:05AM
2   able to conduct an in camera review of that joint defense              09:05AM
3   agreement to determine if there's any potential for conflict           09:05AM
4   of interest.  You know, the big concern, you know, that the            09:05AM
5   government has is, we have Defendant Hansen who wasn't a               09:05AM
6   defendant in the initial indictment, um, is a defendant now,           09:05AM
7   and our concern is, if Defendant Hansen is paying the legal            09:05AM
8   fees of its co-defendants, you know, there is a potential for          09:05AM
9   conflict of interest if one of these defendants chooses to             09:05AM
10  want to cooperate and assist the government against its                09:05AM
11  co-defendants but can't because Defendant Hansen is paying its         09:05AM
12  attorneys fees.                                                        09:05AM
13          So, you know, that is a conflict of interest that             09:05AM
14  the government is trying to avoid.  The other thing, too, is           09:05AM
15  you know, what we want to point out in addition is, you know,          09:06AM
16  we had attorney Martin who, you know, it's our position, was           09:06AM
17  representing Defendant Hansen and Defendant Walker at the same         09:06AM
18  time.  And so, you know, that was evident in the sense that            09:06AM
19  you know, now, you know, they have attorney Han who's now              09:06AM
20  representing Defendant Hansen.  But, you know, since the               09:06AM
21  indictment, you know, there's multiple layers of the potential        09:06AM
22  for conflict of interest to arise.                                     09:06AM
23          At one point, attorney McConwell, and this was                09:06AM
24  noted in our filing ECF 416, you know, we have attorney                09:06AM
25  McConwell that sought to deregister aircraft with the FAA.             09:06AM

1    And what's important to note is these aircraft that he's          09:06AM

2    looking to deregister belong to subsidiaries of Defendant         09:06AM

3    Hansen, again, who at least at one time was being represented      09:07AM

4    by attorney Martin.                                               09:07AM

5              So, you know, we have that potential conflict of        09:07AM

6    interest where attorney McConwell, in essence, representing        09:07AM

7    these Defendant Hansen subsidiaries and trying to deregister       09:07AM

8    these aircraft with the FAA.  We also have Defendant Crowe and     09:07AM

9    Defendant Crowe either has a position and/or role with these       09:07AM

10   Vanuatu subsidiaries.  And the same thing with Defendant           09:07AM

11   Crowe, he sought to deregister aircraft with the FAA, again,       09:07AM

12   creating this potential layer of a conflict, not only with         09:07AM

13   himself, but again, attorney Martin and others.                    09:07AM

14             So, you know, that -- you know, the big thing            09:07AM

15   with the government, Your Honor, bringing this motion is just      09:07AM

16   really having a hearing to ensure that, you know, we point out     09:07AM

17   the concerns that we have and, you know, the different             09:07AM

18   scenarios that we believe that there may be a potential            09:08AM

19   conflict of interest.  And, you know, ultimately, it will be       09:08AM

20   the Court to make that determination if a conflict or not even     09:08AM

21   just an actual conflict but the potential for a conflict           09:08AM

22   exists and that's merely what the government is just trying to     09:08AM

23   do, we have an obligation to bring it to the Court's attention     09:08AM

24   if we feel that there is a potential and that's what we did.       09:08AM

25   And so with those arguments, Your Honor, we submit, unless my      09:08AM

| | |
|---|---|
| 1 | co-counsel, SAUSA Miller, has anything else she'd like to add. | 09:08AM |
| 2 | MS. MILLER:  I do not.  I do not.  Thank you, | 09:08AM |
| 3 | Your Honor.  Thank you, Stephen. | 09:08AM |
| 4 | THE COURT:  All right.  Thank you.  Let me begin | 09:08AM |
| 5 | with Mr. Walker's Counsel, Mr. Martin, you can go ahead and | 09:08AM |
| 6 | address if you have addition to add other than what's been | 09:08AM |
| 7 | filed? | 09:08AM |
| 8 | MR. MARTIN:  Your Honor, I accidentally | 09:08AM |
| 9 | disconnected myself, so when I picked up, Mr. Leon Guerrero | 09:08AM |
| 10 | was talking about Hansen and attorney's fees being paid. | 09:08AM |
| 11 | Anything before then, I didn't hear and I apologize.  I | 09:09AM |
| 12 | accidentally disconnected, but let me just briefly say my | 09:09AM |
| 13 | technology, Your Honor, is not that great.  Let me just -- | 09:09AM |
| 14 | THE COURT:  Well, let me just -- I guess, if I | 09:09AM |
| 15 | can attempt to bring you up to speed, Counsel has just brought | 09:09AM |
| 16 | up that there in fact exists a joint defense agreement and | 09:09AM |
| 17 | then the obvious concern about the conflicts.  He referenced | 09:09AM |
| 18 | Mr. McConwell may be representing subsidiaries of Hansen in | 09:09AM |
| 19 | attempts at deregistration.  The Court has reviewed those | 09:09AM |
| 20 | requests, the deregistrations that were filed as exhibits and | 09:09AM |
| 21 | the conflicts that may be associated with that.  So that's | 09:09AM |
| 22 | kind of where the government was.  Go ahead, you can then now | 09:09AM |
| 23 | argue to the Court if you have anything you wish the Court to | 09:09AM |
| 24 | be aware of other than what's been filed. | 09:09AM |
| 25 | MR. MARTIN:  Your Honor, very briefly.  I | 09:09AM |

```
1    represent John Walker.  I don't represent Hansen, I don't        09:09AM
2    represent anyone else.  My loyalties are to John Walker.  He's    09:10AM
3    aware of that.  He's previously executed a waiver of conflict     09:10AM
4    of interest in this case as relation to all other defendants      09:10AM
5    and on behalf of Hansen, a waiver.  But there's -- I              09:10AM
6    understand -- I've been doing this for a long, long time.  I      09:10AM
7    understand what a conflict is.  And if the government wants to     09:10AM
8    make an offer to us for us to cooperate against them, I'm sure    09:10AM
9    willing to hear them.  I don't think Hansen is going to impact    09:10AM
10   my loyalty or duties to John Walker in any way shape or form      09:10AM
11   if that's a concern of theirs.  I will advise the Court that      09:10AM
12   we all do have a common defense.  Our common defense is we        09:10AM
13   haven't done anything wrong, but that doesn't create a            09:10AM
14   conflict of interest.  I think the issues are clearly set out     09:10AM
15   in the briefs filed by all the parties and I would stand on       09:10AM
16   that, Judge.                                                      09:10AM
17            THE COURT:  All right.  Thank you, Mr. Martin.           09:10AM
18   Let me -- go ahead, I'm sorry.                                    09:10AM
19            (Pause.)                                                 09:11AM
20            THE COURT:  We may have lost Mr. Martin again.           09:11AM
21            MR. MARTIN:  No, I'm here.  I'm here, Judge.  Can        09:11AM
22   you hear me?                                                      09:11AM
23            THE COURT:  Yes, okay.  Is that it, Mr. Martin?          09:11AM
24            MR. MARTIN:  That's it, and I think my Counsel --        09:11AM
25   my client's on the phone, if you need a waiver from him, he       09:11AM
```

```
 1   can orally do it and if we need to do another one, we're happy        09:11AM
 2   to do that.                                                           09:11AM
 3            THE COURT:  All right.  Let me just move up the              09:11AM
 4   line.  Mr. Perez, anything on behalf of Mr. Reed?                     09:11AM
 5            MR. PEREZ:  Just briefly, Your Honor.  First, we             09:11AM
 6   join in the opposition filed by co-defendants in Document 415         09:11AM
 7   and 417.  I would just reiterate that my loyalty as Counsel is        09:11AM
 8   to Defendant Reed only.  I would also point out that Mr. Reed         09:11AM
 9   also signed a waiver which was submitted to the Court                 09:11AM
10   previously.                                                           09:11AM
11            I would just also submit that the government has             09:11AM
12   made no threshold showing of any conflict and I would also           09:11AM
13   just point out that the issue regarding the conflict based           09:11AM
14   upon payment of fees was raised previously by the government         09:11AM
15   addressed by this Court with Judge Manibusan and was denied          09:11AM
16   back then and this is the same issue that's being raised again       09:12AM
17   and I have nothing further to add other than that.                   09:12AM
18            THE COURT:  All right.  Mr. Pole, anything to add           09:12AM
19   on behalf of Mr. Rogers?                                             09:12AM
20            MR. POLE:  Your Honor, I would just add that of             09:12AM
21   course, again, my loyalty is to Mr. Rogers and he's only on          09:12AM
22   one count.  So that even if there was a conflict for the other       09:12AM
23   defendants, which we don't see, it wouldn't be imputed to my         09:12AM
24   client, Your Honor.                                                  09:12AM
25            THE COURT:  All right.  On behalf of Mr. Kapp,              09:12AM
```

1   Mr. McConwell or Tony?                                      09:12AM

2           MR. MCCONWELL:  This is Mr. McConwell, Your         09:12AM

3   Honor.  I join in that.  My loyalty is to Mr. Kapp.  He's also  09:12AM

4   waived any potential conflict.  I do not believe there's a   09:12AM

5   conflict with regard to the administrative matters we've been  09:12AM

6   dealing with, with regard to the FAA enforcement case or the  09:12AM

7   letter, or e-mail that you got from me to another Counsel in  09:12AM

8   this case urging them to go ahead and allow deregistration.  I  09:13AM

9   might point out to you they have blocked every deregistration  09:13AM

10  of aircraft in the registry right now and I think they have  09:13AM

11  something like 58 hold orders, so they're trying to block  09:13AM

12  deregistration by Hansen of the right to deregister their  09:13AM

13  aircraft.  But my client has no objection to the network that  09:13AM

14  I've done for the Vanuatu corporations and has executed the  09:13AM

15  waiver.                                                      09:13AM

16          THE COURT:  All right.  Thank you, Mr. McConwell.   09:13AM

17  On behalf of Mr. Crowe, Mr. Nicolaysen?                      09:13AM

18          MR. NICOLAYSEN:  Yes, thank you, Your Honor, Greg   09:13AM

19  Nicolaysen from Los Angeles speaking on behalf of Mr. Crowe  09:13AM

20  together with my co-Counsel David Lujan.  Your Honor, I ask  09:13AM

21  the Court to take note as our papers mention of the waiver of  09:13AM

22  conflicts filed on February 22nd of 2019, PACER            09:13AM

23  Document 2-0-4.  That waiver resolves any issue of any      09:14AM

24  potential conflict and there certainly was no actual conflict  09:14AM

25  that was being raised by the government in its initial filing  09:14AM

1    back in 2018.  And so looking at February of 2019 forward in       09:14AM

2    time up to the present time, the government has not addressed       09:14AM

3    any circumstance that would suggest that during the period         09:14AM

4    subsequent to the filing of the conflict waivers, which Judge      09:14AM

5    Manibusan accepted, there has been anything to raise divided       09:14AM

6    loyalties or any other type of conflict in regard to the          09:14AM

7    representation of Mr. Crowe.  And in my view, that this is        09:14AM

8    simply, as our papers argue, an effort to delay the trial.        09:14AM

9              In regard to the filing of the amended motion,          09:14AM

10   it's all in our papers, I won't repeat the argument here, but     09:14AM

11   there is certainly no basis for any type of conflict inquiry      09:15AM

12   or even for the filing of a supplemental waiver.  There is no     09:15AM

13   need for any additional waiver in regard to Mr. Crowe.            09:15AM

14             THE COURT:  All right.  Thank you,                      09:15AM

15   Mr. Nicolaysen.  I apologize for butchering your name but I      09:15AM

16   think I got it now.                                               09:15AM

17             MR. NICOLAYSEN:  No, it's fine.                         09:15AM

18             THE COURT:  Mr. Han, on behalf of Hansen               09:15AM

19   Helicopters, anything -- because you're -- I guess the amended   09:15AM

20   complaint that is now Hansen formally as a defendant.            09:15AM

21             MR. HAN:  Yes, Your Honor.  Um, nothing else to       09:15AM

22   add except the fact that I'd be loyal to the Hansen              09:15AM

23   Helicopters, the corporation.                                     09:15AM

24             THE COURT:  All right.  Thank you.                      09:15AM

25             MR. LEON GUERRERO:  Your Honor, this is AUSA Leon      09:15AM

| | |
|---|---|
| 1 | Guerrero, just a brief rebuttal. | 09:15AM |
| 2 | THE COURT:  Okay.  Go ahead. | 09:15AM |
| 3 | MR. LEON GUERRERO:  Now, I would say that the, | 09:15AM |
| 4 | you know, the circumstances have changed and really those | 09:15AM |
| 5 | waivers that were previously submitted to the Court are | 09:15AM |
| 6 | outdated because at the time, Defendant Hansen was not a | 09:16AM |
| 7 | co-defendant in the case.  So I would say that the | 09:16AM |
| 8 | circumstances have changed and really those -- the initial | 09:16AM |
| 9 | waivers that were provided to the Court really are no longer | 09:16AM |
| 10 | pertinent and they're outdated, given the current superseding | 09:16AM |
| 11 | indictment. | 09:16AM |
| 12 | THE COURT:  All right. | 09:16AM |
| 13 | MR. NICOLAYSEN:  Your Honor, on behalf of | 09:16AM |
| 14 | Mr. Crowe, I'd like to respond since it was in response to my | 09:16AM |
| 15 | comment.  The government has an obligation to make a prima | 09:16AM |
| 16 | facie showing that there is a reason to be concerned about a | 09:16AM |
| 17 | serious potential for conflict or an actual conflict.  The | 09:16AM |
| 18 | mere fact that the corporate entity was not a defendant at the | 09:16AM |
| 19 | time the original conflict waivers were filed in February 2019 | 09:16AM |
| 20 | and we now have the corporate defendant in this case, that is | 09:16AM |
| 21 | not a sufficient change of circumstance to suggest that there | 09:16AM |
| 22 | are divided loyalties that would warrant further inquiry.  And | 09:17AM |
| 23 | the government needs to demonstrate that there is some basis | 09:17AM |
| 24 | for divided loyalties sufficient to conduct further inquiry in | 09:17AM |
| 25 | camera or otherwise.  If the Court wishes to conduct further | 09:17AM |

```
 1    inquiry, I would recommend that that be done outside the          09:17AM
 2    government's presence and the Court can take oral waivers by       09:17AM
 3    phone at this hearing in an under-seal proceeding and we can       09:17AM
 4    have it resolved now.  I don't think it's necessary, but I         09:17AM
 5    think the defendants would be prepared to do that if the Court     09:17AM
 6    feels that the need has arisen for a supplemental waiver.          09:17AM
 7              THE COURT:  No, the Court has reviewed the               09:17AM
 8    defendants' briefs and also the arguments with respect to the      09:17AM
 9    nature of the initial investigation and the government's           09:17AM
10    awareness certainly since 2015 of the involvement of -- well,      09:17AM
11    the newest defendant, Hansen Helicopters, and that the            09:17AM
12    investigation really was -- was -- was geared towards them         09:17AM
13    from the beginning.                                                09:18AM
14              The Court, I think, just needs to remind the             09:18AM
15    lawyers to, you know, I'm sure the lawyers are aware of their      09:18AM
16    duty under Rule 1.8 and just make sure that you guys remain in     09:18AM
17    compliance with the rules and everybody's affirmatively stated     09:18AM
18    their loyalty to their specific client -- the insistence of a      09:18AM
19    defense agreement and whether or not compensation may or may       09:18AM
20    not be coming from -- from -- from persons other than their        09:18AM
21    client.  So let's just make sure we remain cognizant of that       09:18AM
22    and remain in compliance with that as well as 1.6 dealing with     09:18AM
23    confidentiality with respect to your individual client.  Okay?     09:18AM
24    I don't think the Court needs to be concerned with that.  The      09:18AM
25    second motion before the Court is -- so the Court will take        09:18AM
```

1  that matter under advisement and will issue an order as soon  `09:18AM`

2  as possible.  `09:18AM`

3          The other motion before the Court is motion for  `09:19AM`

4  protective order by the government to schedule an inspection  `09:19AM`

5  and to prevent harassment of the witnesses.  Again, the Court  `09:19AM`

6  has reviewed all the documents that have been filed  `09:19AM`

7  previously.  Mr. Leon Guerrero or Ms. Martin [sic], is there  `09:19AM`

8  anything the government wishes to add with respect to that  `09:19AM`

9  motion?  `09:19AM`

10          MS. MILLER:  Yes, Your Honor, this is Marie  `09:19AM`

11  Miller, can you hear me?  `09:19AM`

12          THE COURT:  I'm sorry, Ms. Miller, I apologize.  `09:19AM`

13          MS. MILLER:  Oh, that's okay.  Can you hear me  `09:19AM`

14  okay?  `09:19AM`

15          MR. MARTIN:  Your Honor, may I interject  `09:19AM`

16  something first?  `09:19AM`

17          THE COURT:  And who is this?  `09:19AM`

18          MR. MARTIN:  This is Mr. Martin, Your Honor.  I  `09:19AM`

19  represent Mr. Walker.  I had a suggestion about this motion if  `09:19AM`

20  I might interject and then if you want to proceed, that's  `09:19AM`

21  fine.  `09:19AM`

22          THE COURT:  Go ahead.  `09:19AM`

23          MR. MARTIN:  That the government has also filed,  `09:19AM`

24  issued 62 subpoenas for the production of these same identical  `09:19AM`

25  helicopters addressing almost the same issues, and rather than  `09:19AM`

being repetitive, I was going to suggest we might set both                   09:19AM

arguments for the same time at a later date, because the same                09:20AM

issues will virtually be addressed in those arguments that are               09:20AM

going to be addressed here.  And if the Court wants to                       09:20AM

proceed, that's fine, but I wanted to make that suggestion.                  09:20AM

      THE COURT:  So Ms. Miller, what is the briefing              09:20AM

period -- I assume, Mr. Martin, you're referring to a motion                 09:20AM

to quash the subpoenas then, there's a motion to quash that's                09:20AM

pending; is that correct?                                                    09:20AM

      MR. MARTIN:  That's correct, Your Honor.                       09:20AM

      THE COURT:  Does anybody know what the briefing                09:20AM

schedule is for that?  I don't know it off hand.                             09:20AM

      MS. MILLER:  Your Honor, there isn't anything                  09:20AM

scheduled yet in terms of hearing that motion and the                        09:20AM

government does not concede that the Rule 16 motion is the                   09:20AM

same as the Rule 17 motion.  Those are two distinct procedural               09:20AM

processes and it is inappropriate to say that they should be                 09:20AM

argued and heard at the same time.  The motion for a                         09:20AM

protective order is a critical motion that should be heard and               09:20AM

ruled on by the Court as soon as possible and since we have                  09:20AM

this hearing time and no one has before now recommended that                 09:21AM

we move it and combine it with the Rule 17 motion and I                      09:21AM

suggest we do go forward, Your Honor.                                        09:21AM

      THE COURT:  All right.  Go ahead, Ms. Miller,                  09:21AM

then.  Mr. Martin, we'll hear the argument and go from there.                09:21AM

1    MS. MILLER:  Thank you, Your Honor.  So I know    09:21AM

2    Your Honor does not want to hear anything that has already    09:21AM

3    been previously filed.  I will however bring something to the    09:21AM

4    Court's attention that the Court may not be fully aware of:    09:21AM

5    Number one, the FAA has tried to inspect these    09:21AM

6    helicopters 29 times.  There are 29 letters that have gone    09:21AM

7    from the FAA to the defendants seeking repeatedly to inspect    09:21AM

8    these helicopters to ensure that they are safe and air-worthy.    09:21AM

9    One of those requests was on Helicopter N No.    09:21AM

10   9068-F, as in Frank.  And that particular aircraft was one    09:22AM

11   that crashed and killed a pilot on September 3rd of 2015.  And    09:22AM

12   the defendants continue to refuse to produce the helicopters    09:22AM

13   for inspection by the FAA for years, making numerous excuses    09:22AM

14   similar to the excuses that they made in response to the    09:22AM

15   government's motion here, that it would be too difficult to    09:22AM

16   pull the helicopters in, that it is too challenging, that is    09:22AM

17   it would cost them too much money, and our response is, too    09:22AM

18   bad.  The defendants actually are the ones who sought the    09:22AM

19   registration of all of these helicopters by the FAA.  And when    09:22AM

20   they sought that registration by the FAA, they certified under    09:22AM

21   penalty of perjury that they were seeking the registration to    09:22AM

22   comply with all of the FAA rules and conditions, and since    09:23AM

23   then, they have done anything but comply with those rules and    09:23AM

24   conditions.    09:23AM

25   In this particular case, Your Honor, there has    09:23AM

1    been a plea agreement entered into by an FAA inspector who         09:23AM

2    admitted to his role in the honest services fraud and his role      09:23AM

3    in issuing 30 airworthiness certificates, 3-0, to these             09:23AM

4    defendants, without having actually conducted a proper              09:23AM

5    inspection of either the aircraft or the legitimate paperwork       09:23AM

6    tied to the aircraft.                                               09:23AM

7              Another thing that Your Honor hasn't seen in the          09:23AM

8    pleadings is that there have been nine deaths associated with       09:23AM

9    Hansen-owned helicopters, six serious injuries associated with      09:23AM

10   Hansen-owned and -operated helicopters.  We know that the           09:23AM

11   defendants have, "deregistered" and "reregistered" aircraft in      09:24AM

12   the Philippines before.                                             09:24AM

13             For example, Your Honor, one of the aircraft,             09:24AM

14   N369TG, Mr. Crowe said that Echo Air owned that aircraft.           09:24AM

15   Echo Air is one of the numerous Vanuatu corporations created        09:24AM

16   by the defendants for, according to them, insurance purposes.       09:24AM

17   And despite the fact that Mr. Crowe indicated to the FAA that       09:24AM

18   that aircraft is owned by Hansen outright and, therefore,           09:24AM

19   Hansen has the right to deregister it and to reregister it in       09:24AM

20   the Philippines, the FAA also has certification from Venezuela      09:24AM

21   that that identical aircraft is registered there by a third         09:24AM

22   party.  Every single helicopter was registered with the FAA.       09:24AM

23   And another example is N444GJ.  Every single request for            09:25AM

24   paperwork regarding that aircraft, even though it was               09:25AM

25   allegedly a Vanuatu-owned aircraft, the defendants asked that       09:25AM

1    all that paperwork be sent to Guam and this is something that     09:25AM
2    they've done over and over and over again.                        09:25AM

3           We have a letter that we produced to you, Your            09:25AM
4    Honor, from the Philippines, indicating -- not only from the      09:25AM
5    Philippines by the way, Your Honor, from Vanuatu, from            09:25AM
6    Palawan, confirming that the aircraft that the defendants         09:25AM
7    ostensively deregistered here to reregister there were never      09:25AM
8    in fact registered or their registrations were allowed to fail    09:25AM
9    in the case of the Philippines.                                   09:25AM

10          I submitted to the Court yesterday an exhibit             09:25AM
11   just to show you and to provide you with an example of just       09:26AM
12   how outrageous the defendants' conduct is in relation to this     09:26AM
13   particular case.  The defendants submitted an exhibit in          09:26AM
14   support of their motion to dismiss that the defendants            09:26AM
15   represented was an exhibit relating to aircraft N831FG.  But      09:26AM
16   what the defendants did was they only submitted to the Court      09:26AM
17   part of the file on N831FG.  They submitted an export letter      09:26AM
18   requesting deregistration of that aircraft.  They submitted a     09:26AM
19   deregistration confirmation.  They submitted a letter from the    09:26AM
20   FAA registering the aircraft after the export request and then    09:26AM
21   the registration from the FAA.  What they did not submit to       09:26AM
22   this Court was a statement of the whereabouts of that aircraft    09:26AM
23   showing that that aircraft never left Guam, despite the           09:27AM
24   representations to the government that it was being exported.     09:27AM
25   What they didn't produce to the Court was a letter from           09:27AM

1    Mr. Walker requesting the FAA registration after that aircraft          09:27AM
2    was supposedly exported but we know it was never exported, nor          09:27AM
3    did they produce to the Court another letter to the FAA,                09:27AM
4    indicating that they were waiting for Vanuatu to confirm that           09:27AM
5    the helicopter was never registered there and then they also            09:27AM
6    didn't produce to the Court the Vanuatu confirmation that the           09:27AM
7    aircraft was never registered there.  We have letters from the          09:27AM
8    defendants going to the FAA over the last ten years, talking            09:27AM
9    about aircraft being exported, then saying, no, we never                09:27AM
10   exported this aircraft, and meanwhile, the aircraft is in               09:27AM
11   registration limbo, but we know, based on the information we            09:28AM
12   received from the defendants, that these helicopters are                09:28AM
13   making them millions of dollars a year, despite the fact that           09:28AM
14   they have not been properly inspected.                                  09:28AM
15           Finally, Your Honor, they want to ostensively                   09:28AM
16   remove the aircraft to the Philippines but we also produced a           09:28AM
17   document for you from the Philippines referring to the                  09:28AM
18   defendants' utter defiance of civil aviation law and disregard          09:28AM
19   of their responsibilities to the Philippines equivalent of the          09:28AM
20   FAA as they have here.                                                  09:28AM
21           Your Honor, you have the authority under Rule 16                09:28AM
22   of the Federal Rules of Criminal Procedure to enter a                   09:28AM
23   protective order to allow the inspection of these helicopters           09:28AM
24   and also to assure that they are not deregistered and not               09:28AM
25   moved outside of the jurisdiction of the United States.  When           09:28AM

1   you consider what has happened in this case and how the          09:29AM

2   defendants have repeatedly, repeatedly lied to the FAA and        09:29AM

3   misrepresented and they are still using these helicopters to      09:29AM

4   transport pilots and mechanics, putting all these individuals     09:29AM

5   in danger, we ask this Court to exercise your jurisdiction        09:29AM

6   under the rule and under the case law that we cited to grant      09:29AM

7   the motion for a protective order, to require the defendants      09:29AM

8   to finally bring these helicopters back to Guam for a proper      09:29AM

9   inspection by the government and to make them available to the    09:29AM

10  government.  And I don't wish to add anything else other than     09:29AM

11  what was already previously filed with the Court regarding the    09:29AM

12  witness tampering, any other issues.  Thank you, Your Honor.      09:29AM

13              THE COURT:  All right.  Let's -- Mr. Martin, on       09:29AM

14  behalf of Mr. Walker?                                            09:29AM

15              MR. MARTIN:  Yes, Your Honor, thank you very          09:30AM

16  much.  Your Honor, I'm not sure that the government              09:30AM

17  understands the purpose of Rule 16 discovery.  They asked for     09:30AM

18  discovery in this criminal case.  They don't represent the       09:30AM

19  Department of Transportation, they don't represent the FAA,       09:30AM

20  they don't represent the Federal Bureau of Investigation, they    09:30AM

21  don't represent Mr. Cislo, who's their star witness that they     09:30AM

22  talk about in this case.  Their one -- their alleged purpose      09:30AM

23  for this is for safety and airworthiness and they talk about      09:30AM

24  29 letters that have been sent ten years ago before I was even    09:30AM

25  involved in this case.  They admit they sent me one letter        09:30AM

```
1    that was attached to my motion.  I believe it was              09:30AM
2    December 12th saying, "Please tell us when we can inspect       09:30AM
3    these helicopters" and I responded to the letter, I asked them  09:30AM
4    to tell me what authority they had to do that.  I said if you   09:30AM
5    got a problem with it, we'll take it up with Judge Gatewood or  09:30AM
6    call me on the phone.  Neither one of those occurred.  They     09:31AM
7    didn't call me, we didn't take it up with Judge Gatewood.  I    09:31AM
8    figured they realized that they didn't have the authority to    09:31AM
9    do that, so we went on.                                         09:31AM
10            Secondly, they talk about the case law in support      09:31AM
11   of their motion for protective order.  They cited no case law,  09:31AM
12   Your Honor.  Rule 16 doesn't -- the way I read the rule,        09:31AM
13   doesn't give the government the authority to come in and        09:31AM
14   inspect evidence that -- for materials that -- in a case,       09:31AM
15   unless we're going to use it and I, in my motion said, we're    09:31AM
16   not going to produce any helicopters, we're not going to use    09:31AM
17   any helicopters at trial so we shouldn't -- we shouldn't        09:31AM
18   produce it.                                                     09:31AM
19            Thirdly, Your Honor, the thing that offends me         09:31AM
20   the most, and I use that word very lightly, is the personal     09:31AM
21   attacks on lawyers.  The government has misrepresented in       09:31AM
22   their motions things that my co-Counsel have been involved in,  09:31AM
23   in this case.  In particular, in reference to Mr. Cislo, they   09:32AM
24   make blatant allegations that Mr. McConwell confronted and      09:32AM
25   accosted Mr. Cislo, which did not occur.  The government        09:32AM
```

1  finally in January provided to us a 302 that's been identified    09:32AM
2  as FBI Hansen Document No. 046383, where during a proffer          09:32AM
3  session, the government alleged that Mr. McConwell confronted      09:32AM
4  him inside his hangar.  Mr. Cislo, and I'm reading from the        09:32AM
5  FBI 302 itself now, says "On Saturday, July 14th, a male           09:32AM
6  individual initiated contact with Cislo outside, outside of        09:32AM
7  his private hangar."  I made representations to the Court, as      09:32AM
8  an officer of the Court, quite honestly, what occurred by mere     09:32AM
9  happenstance on July 14th, and for them to make some type of       09:33AM
10 outrageous allegations that he tried to talk to him and he        09:33AM
11 tried to confront him about the case, he didn't intimidate him    09:33AM
12 at all, Your Honor.  Mr. Cislo doesn't say that.  Mr. Cislo       09:33AM
13 says -- even mentions that Mr. McConwell advised him that he      09:33AM
14 attempted to contact Cislo's attorney, they did not receive a     09:33AM
15 reply, consistent with exactly what I put in the motion, Your     09:33AM
16 Honor.  No Counsel in this case has done anything               09:33AM
17 inappropriate.  And I find it kind of offensive that the         09:33AM
18 government would allege that there's something done             09:33AM
19 inappropriate by any Counsel.  There's no basis for a          09:33AM
20 protective order.  We all know the rules of ethics in this     09:33AM
21 case just like we know the rules relating to a conflict of     09:33AM
22 interest.  I ask the Court to deny the government's motion,    09:33AM
23 Your Honor.                                                      09:33AM
24         THE COURT:  All right.  Thank you, Mr. Martin.          09:33AM
25 Mr. Nicolaysen, anything to add?                                 09:33AM

1          MR. NICOLAYSEN:  Yes, Your Honor.  Thank you.                09:33AM

2     Rule 16 is a very narrow and specific rule in criminal            09:34AM

3     proceedings.  It deals with discovery by both sides.  The         09:34AM

4     issuance of protective orders provide restrictions under          09:34AM

5     Rule 16 that focus on the production of information by the        09:34AM

6     government typically by which parameters are being established    09:34AM

7     regarding the use of such evidence by the parties and we have     09:34AM

8     these protective orders in gang cases, identity theft cases,      09:34AM

9     etc., which is all about regulating how evidence is going to      09:34AM

10    be managed and used by the parties.                               09:34AM

11          When the government seeks a protective order with           09:34AM

12    respect to the defense, that protective order under Rule 16       09:34AM

13    must be tailored to defense evidence.  That's not what's          09:34AM

14    happening here.  I'll give an example.  If the defendants         09:34AM

15    designated as a trial exhibit, a particular FAA-approved part     09:34AM

16    that was used on the helicopters during the time period of the    09:35AM

17    indictment, 2012 up to May 2018 when the first indictment was     09:35AM

18    filed, and we are going to be having testimony at trial           09:35AM

19    regarding that part, part of our presentation regarding           09:35AM

20    helicopters, then the Court would be well within its rights       09:35AM

21    and the government likewise, to direct the defense to make        09:35AM

22    that part available for inspection because that part is now       09:35AM

23    being designated by the defense as a trial exhibit.  Now          09:35AM

24    that's not happening -- the defense is not going to be            09:35AM

25    designating helicopters as defense exhibits.  That's just not     09:35AM

1    going to happen.  And therefore, the helicopters, which are        09:35AM

2    the subject of this motion, do not fall within the purview of      09:35AM

3    Rule 16.  They are not reciprocal discovery from the defense       09:35AM

4    to the government and the Court cannot issue any protective        09:35AM

5    orders with regard to those helicopters because those             09:36AM

6    helicopters simply don't fall within the parameters of Rule 16    09:36AM

7    and the government has made it clear in its filings, and as        09:36AM

8    recently as yesterday in Document 460, that their motion for       09:36AM

9    protective order is being brought under Rule 16.  It's            09:36AM

10   referred to as, "the government's Rule 16 motion."  So           09:36AM

11   therefore, the request by the government for (background          09:36AM

12   noise) to inspect the helicopters, order directing Hansen not    09:36AM

13   to transfer these helicopters as part of some sort of a          09:36AM

14   protective order, all of that has to be justified within the     09:36AM

15   very narrow and specific criteria of Rule 16, and because the    09:36AM

16   helicopters don't fall within Rule 16, they are not reciprocal   09:36AM

17   discovery, they are not going to be trial exhibits, this         09:36AM

18   Court, and I say this with respect, has no authority to order    09:36AM

19   any inspection.  And what the government is doing, is arguing    09:36AM

20   its case as if it were before an administrative body.  Marie     09:37AM

21   Miller is from the Department of Transportation, she's well      09:37AM

22   versed in FAA administrative procedures and the arguments that   09:37AM

23   she has presented here, which pertain to which she considers     09:37AM

24   safety issues, that there have been numerous requests to         09:37AM

25   inspect, that in her judgment have been ignored, and so on all   09:37AM

1    of that, goes to the issue of the FAA and the regulatory          09:37AM

2    agency having the authority to suspend or revoke                  09:37AM

3    registrations, suspend or revoke airworthiness certificates.      09:37AM

4    That's the power of a regulatory agency, same thing with the      09:37AM

5    FDA over a drug company, the ACF over a gun manufacturer and      09:37AM

6    so on.  The arguments presented by Ms. Miller are suited for     09:37AM

7    the administrative environment where Hansen or whoever would     09:37AM

8    be, you know, deemed the appropriate owner of the helicopters,   09:38AM

9    would be subject to some administrative sanction for failing     09:38AM

10   to satisfy the safety and other obligations including making     09:38AM

11   the helicopters available for inspection.  That's an            09:38AM

12   administrative issue.  That has nothing at all to do with the   09:38AM

13   criminal proceeding or the narrow criteria under Rule 16.  And  09:38AM

14   I should emphasize that these helicopters, the vast majority     09:38AM

15   of the ones that's listed in the superseding indictment, which  09:38AM

16   for round numbers -- let's just use the number sixty, the vast  09:38AM

17   majority of these helicopters have valid registrations and       09:38AM

18   valid airworthiness certificates.  In fact, registrations have  09:38AM

19   three-year time tables and if Your Honor goes to www.faa.gov     09:38AM

20   and you have the superseding indictment in front of Your Honor  09:38AM

21   that has the table and all of these N numbers of the sixty       09:38AM

22   helicopters and you just start typing these N numbers into the  09:39AM

23   search engine on the home page, you'll get the profile of the   09:39AM

24   helicopters and you will see that the vast majority of them     09:39AM

25   have valid registrations.  Well, in fact, valid registrations   09:39AM

that expire either this year, 2021, even 2022.  That means the
FAA has been renewing these registrations during the period of
the investigation of this case which goes back at least to
2015 and earlier, and during the prosecution of this case.

          So when the government complains, as it does,
that the helicopters are unsafe, and that we have refused
inspections, those administrative arguments should be directed
to the FAA as part of a claim that maybe the registrations
should not have been renewed, maybe they should be suspended
or revoked.  But this is a motion under Rule 16 and none of
the arguments the government has presented in its papers or
here today orally have any relevance whatsoever to Rule 16.

          Let me just close by speaking about the
chronology of the superseding indictment.  If Your Honor goes
through the superseding indictment with an eye to the time
periods of the different counts, and if the Court please, I'll
be glad to do it, I have yellow highlighted it so I could
recite all the paragraphs in the superseding indictment.  Your
Honor will see that the government has consistently framed the
chronology of this prosecution from year 2012 up through May
of 2018, which is the doorstep of the filing of the initial
indictment, which was filed on May 31, 2018.

          The superseding indictment, which was filed in
December 2019, a year and a half later, has one substantive
count that has to do with registrations that they claim was,

1    you know, improperly done on June 10th of 2018, a couple of

2    weeks after the first indictment.  But other than that one

3    ministerial charge, the entire superseding indictment is based

4    on the same chronology as the original indictment, which

5    doesn't go beyond May of 2018, and of course we are now in May

6    of 2020, two years later.

7              So the government cannot properly argue that

8    there is anything about the current helicopters that are

9    flying that has any relevance to the charges in the

10   indictment.  There is no allegation of continuity of

11   misconduct, or that the charged conspiracy are ongoing

12   conspiracies.  It'd be very different in a RICO case.  We've

13   all seen RICO cases where, let's just use a gang or a mafia

14   family where the defendants are on trial as members of a RICO

15   enterprise that is still in existence through the ongoing

16   prosecution and all the way up through a trial.  And so when

17   the mob family bosses in New York are on trial for being a

18   member of -- you know, being a leader of the Gambino family,

19   while they're in trial and while the prosecution is ongoing,

20   the RICO enterprise is considered to be still active.  And so

21   it's still ongoing criminal activities.  That's one of the key

22   centers between RICO and conspiracy.  Conspiracy, as we see in

23   this case, has bookends; it has a beginning and an end.  And

24   it's critical to recognize that the government is seeking to

25   have Court orders issued for inspections that the Court is not

1   authorized to issue, but the government is misunderstanding    09:42AM

2   that today's helicopters have nothing to do with the time     09:42AM

3   frame of the charge, because there's no allegation of any     09:42AM

4   continuity of misconduct, that there's any crime being        09:42AM

5   committed in 2020 that is relevant to the charge in this case, 09:42AM

6   unless the government is planning to supersede.  And if they  09:43AM

7   are, I ask the government through Your Honor, tell us now so   09:43AM

8   that we understand that; otherwise, based on chronology alone, 09:43AM

9   the concept of inspection is completely irrelevant because of 09:43AM

10  the two-year lapse between May of 2018 when the indictment    09:43AM

11  charges them and May of 2020, which is where we are today.    09:43AM

12  Those are my arguments to Your Honor and I would ask that the 09:43AM

13  government's motion be denied.                                09:43AM

14          THE COURT:  All right.  Mr. Perez or                 09:43AM

15  Mr. McConwell on behalf of Defendant Kapp, anything to add?  09:43AM

16          MR. PEREZ:  Your Honor, I join in the opposition     09:43AM

17  of 422, 424, 428 and 434 and we rest on those as well as the 09:43AM

18  oral arguments presented by Mr. Martin and Mr. Nicolaysen.   09:43AM

19          MR. MCCONWELL:  This is Edward McConwell, Your        09:43AM

20  Honor, if I could respond a little bit here.  I could respond 09:43AM

21  to everything that Ms. Miller said and believe me, she's only 09:43AM

22  told you a fraction of the story in this matter.  There is    09:44AM

23  issues that she just brushed over and not given you the whole 09:44AM

24  story.                                                        09:44AM

25          One example you may not be aware of, but there's      09:44AM

1    a motion to dismiss on lack of jurisdiction that's pending    09:44AM

2    right now, it's been filed before the Court dealing with the    09:44AM

3    validity or invalidity of the airworthiness cert -- or the    09:44AM

4    registration certificates themselves.    09:44AM

5            MR. MILLER:  Your Honor, I'm sorry to interrupt    09:44AM

6    but I'm going to object to Mr. McConwell arguing anything    09:44AM

7    relating to the motion to dismiss.  I didn't ignore it.  We're    09:44AM

8    not here to argue it.    09:44AM

9            THE COURT:  All right.    09:44AM

10           MR. MCCONWELL:  I'm bringing the matter to the    09:44AM

11   Court's attention.  I wasn't going to argue it, but I do want    09:44AM

12   to give one example of something she did bring up that is very    09:44AM

13   important in this case.  She highlights 9068 Fox Trot.  Now,    09:44AM

14   that's an aircraft that had an accident in September of 2015    09:44AM

15   and the Court -- the FAA was aware as of that time and    09:45AM

16   actually back in April of 2015 of an issue with regard to the    09:45AM

17   validity or invalidity to the aircraft registrations.  They    09:45AM

18   acknowledged in their search warrant affidavit with regard to    09:45AM

19   the search warrant that was issued from Guam by Judge    09:45AM

20   Manibusan that 9068 Fox Trot was registered in the Philippines    09:45AM

21   and because of that, and because of international law, that    09:45AM

22   was an invalid registration, and at that point, absolutely    09:45AM

23   knew they did not have jurisdiction over that aircraft, yet    09:45AM

24   they plowed ahead and ignored the fact they didn't have    09:45AM

25   jurisdiction with regard to that aircraft and the    09:45AM

09:45AM
09:45AM
09:45AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:46AM
09:47AM
09:47AM
09:47AM
09:47AM
09:47AM
09:47AM

1  investigation that ensued from that, but it goes to the entire

2  line of Vanuatu corporations.  They were totally aware of the

3  existence of them, the number and that they were foreign

4  corporations.  That is implications that we'll be dealing with

5  later.  I'm not going to go through everything she said.

6  There is a different story.  There's more evidence that would

7  be -- would neutralize the thing that she said and we could

8  explain it to you, but it would take too long to do that.

9        But I do want to go back to the Mr. Cislo thing

10 at the airport.  Mr. Cislo did not tell the truth to the FBI

11 agents and that was an accidental meeting that occurred.  We

12 had no idea that he was going to even be there, didn't even

13 knew he was.  But for the way that has been misrepresented to

14 the Court is very offensive and Mr. Martin's already spoke on

15 my behalf and that's all I'm going to say about that, but I

16 join in the pleadings that have been filed in this matter and

17 ask that the motion for protective order be denied.

18        And I do have my question for you, my

19 understanding, and I've been doing this for over 50 years,

20 that a lawyer has the ability to be able to interview

21 witnesses that are identified by the government or the

22 plaintiff or the adverse party.  The government seems to say

23 that we can't do that and our clients are not supposed to by

24 their conditions of release, but the lawyers and we have

25 ethical standards we have to follow, that we've done nothing

1    wrong and there seems -- seems to say we did and I'd like to          09:47AM

2    know whether we are allowed to interview witnesses.  I will           09:47AM

3    tell you that I had one witness in this case say that he was          09:47AM

4    told not to talk to anybody, including their lawyers, and that        09:47AM

5    appeared to come from the government.                                 09:47AM

6            THE COURT:  All right.  Thank you, Mr. McConwell.             09:47AM

7    Mr. Pete Perez, Jr., on behalf Mr. Reed?  Anything?                   09:47AM

8            MR. PEREZ:  No, Your Honor.                                   09:47AM

9            THE COURT:  All right.  Mr. Pole, on behalf of                09:47AM

10   anything -- Mr. Rogers, anything you wish to add?                     09:47AM

11           MR. POLE:  Your Honor, just two things, one, we              09:47AM

12   continue to object and have objected to the government's             09:48AM

13   painting the defendants as being -- all defendants being in          09:48AM

14   control of the helicopters.  As we have pointed out and it's         09:48AM

15   as well clear from the superseding indictment, Mr. Randy             09:48AM

16   Rogers has no authority over those helicopters and has nothing       09:48AM

17   to do with those helicopters and shouldn't be painted with a        09:48AM

18   stroke as the government is trying to do here or in trial.          09:48AM

19           The only other thing I'd like to point out, Your            09:48AM

20   Honor, obviously while we join with all other defendants in          09:48AM

21   the motion, we're primarily concerned with the issue of the          09:48AM

22   right to interview witnesses and I just wanted to point out          09:48AM

23   that one of the cases that was cited was *United States versus*      09:48AM

24   *Brumel-Alvarez,* which is 991 F.2d 1452, and the reason I want     09:48AM

25   to point out is that was decided by the Ninth Circuit in 1993        09:48AM

1  that found a *Brady* violation where the government failed to        09:48AM

2  provide a DEA memo about one of their star witnesses on --           09:49AM

3  asking for the truth and I just want to point out that even          09:49AM

4  though that was 1993 and therefore before the U.S. Supreme           09:49AM

5  Court in *Kyles v. Whitley*, 514 U.S. 419, which wasn't decided      09:49AM

6  until 1995, that case is still consistent with the U.S.              09:49AM

7  Supreme Court that said that issues of *Brady* must be provided      09:49AM

8  to defense Counsel and is not that it is grounds for                 09:49AM

9  dismissal.  I think -- but we absolutely have a right to             09:49AM

10 interview witnesses to receive information and the government        09:49AM

11 provided nothing to suggest that even if this Court has the          09:49AM

12 right to sanction one defense attorney for alleged misconduct,       09:49AM

13 that it would have a right to sanction all defense attorneys         09:49AM

14 for the same misconduct and not allow for a proper defense,          09:49AM

15 that is, the interviewing of witnesses.  I have nothing              09:49AM

16 further to add, Your Honor.                                          09:49AM

17         THE COURT:  Thank you, Mr. Pole.  Mr. Han,                   09:49AM

18 anything on behalf of Hansen Helicopters other than what's           09:50AM

19 been argued?                                                         09:50AM

20         MR. HAN:  Nothing to add, Your Honor.                        09:50AM

21         THE COURT:  All right.  Ms. Miller, briefly in               09:50AM

22 response to the arguments you heard from defense.                    09:50AM

23         MS. MILLER:  Yes, Your Honor.  First of all,                 09:50AM

24 Mr. Martin actually said the letters that the government sent        09:50AM

25 to us were ten years old, that's absolutely not true.  We have      09:50AM

been sending them letters as recently as last year requesting
09:50AM

inspection of these helicopters.  I have letters dated April
09:50AM

29, 2015, June 23, 2015, July 8, 2015, then we can
09:50AM

fast-forward to May 20, 2016, July 20, 2016.  Let's move
09:50AM

ahead, May 14, 2018, July 2nd, 2019.  I can go on and on, Your
09:50AM

Honor, but the point is that is absolutely a misstatement of
09:50AM

fact.
09:51AM

          The second thing is, Mr. Martin said that the
09:51AM

government doesn't understand Rule 16 and I would disagree
09:51AM

with that and I would also state the defense Counsel has
09:51AM

basically just kind of skirted over the explicit language of
09:51AM

Rule 16 which says that this Court has the authority to
09:51AM

require the defendant to permit inspection by the government
09:51AM

of tangible objects and it's not only those objects that the
09:51AM

defendant intends to use in its case in chief because, again,
09:51AM

a third misstatement by defense Counsel, which is that the
09:51AM

government cited -- case law, the government did cite
09:51AM

substantial case law to support its position, including case
09:51AM

law that indicates that if the defendant intends to
09:51AM

cross-examine any of the government's witnesses in a criminal
09:51AM

case regarding evidence, that the government is entitled to
09:52AM

view that evidence.  It is not a violation of the defendant's
09:52AM

Fifth Amendment privilege against self-incrimination and it is
09:52AM

not necessary that the defendants use that evidence in their
09:52AM

case in chief.  And all that case law was cited by the
09:52AM

1  government to the Court, so I won't repeat it, but it is just          09:52AM
2  completely ridiculous for defense to make that statement that          09:52AM
3  no case law was cited.                                                 09:52AM
4          The fourth thing, Your Honor, is I understand                  09:52AM
5  very well the distinction between administrative proceeding            09:52AM
6  and a civil proceeding.  As a matter of fact, it's going to be         09:52AM
7  really interesting to hear what the defendants have to say             09:52AM
8  when they turn around and argue that administrative                    09:52AM
9  proceedings are the most meaningful thing for the Court to             09:52AM
10 consider, but in this case, yes, I'm an attorney with the DOT          09:52AM
11 OIG.  I'm also a former federal prosecutor with extensive              09:52AM
12 experience in conspiracy cases.                                        09:53AM
13         And the fifth issue that I'd like to address as                09:53AM
14 an experienced federal prosecutor is, a conspiracy is not              09:53AM
15 completed until its abandoned.  We don't have to supersede in          09:53AM
16 order to argue, and we will argue, so all of the defense               09:53AM
17 Counsel need to be put on notice right now, it's the                   09:53AM
18 government's contention that this conspiracy has not ended,            09:53AM
19 the conspiracy has continued.                                          09:53AM
20         As a matter of fact, immediately after the                     09:53AM
21 indictment, the first indictment in this case, there was              09:53AM
22 another accident by one of these helicopters that the                  09:53AM
23 defendants owned and that the defendants have refused to allow         09:53AM
24 to be inspected.                                                       09:53AM
25         The sixth thing I want to address is the Cislo               09:53AM

09:53AM
09:53AM
09:53AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:54AM
09:55AM
09:55AM
09:55AM
09:55AM
09:55AM
09:55AM

1    issue.  This actually relates to the conflict of interest

2    motion that was filed, Your Honor.  If Mr. McConwell is

3    calling Mr. Cislo a liar and saying that he did not disclose

4    their interaction with each other truthfully to the FBI

5    agent, then again, I want to put Mr. McConwell on notice that

6    he will be called as a witness to testify under oath about

7    where that meeting took place, when that meeting took place,

8    what was said during the course of that meeting, because Mr.

9    Cislo has confirmed for us that Mr. McConwell specifically

10   told him that he should not be talking to him, he knew he

11   shouldn't be talking to him, but he was still talking with him

12   and Mr. Cislo said he felt intimidated.

13           So to address the last point that Mr. Rogers'

14   Counsel brought up, the government isn't indicating in any way

15   shape or form that the defense cannot talk to witnesses or

16   understand what they're going to say.  What we are indicating

17   is that it is inappropriate and a violation of law to

18   intimidate witnesses, number one, and number two, to offer to

19   pay attorney's fees for witnesses because that is unduly

20   influencing a witness and it goes into tampering with

21   witnesses and that is what we object to.  I have nothing

22   further to say, Your Honor.  Thank you.

23           MR. NICOLAYSEN:  Your Honor, I'll be happy to

24   respond.  This is Greg Nicolaysen on behalf of Defendant --

25           MS. MILLER:  No, Your Honor, I'm going to object

1    to Counsel responding.  The way these arguments go is, we          09:55AM

2    filed the motion --                                                09:55AM

3              THE COURT:  That's fine.  Ms. Miller, that's all         09:55AM

4    right.  All right.  The Court has heard enough.  The Court         09:55AM

5    will take the matters under advisement, will issue its            09:55AM

6    recommendation and decision as soon as possible.                  09:55AM

7              MS. MILLER:  Thank you, Your Honor.                      09:55AM

8              THE COURT:  Thank you everybody.                         09:55AM

9              (Proceedings concluded at 9:55 a.m.)                     09:55AM

10                            *  *  *

11   ---------------------------------------------

12             CERTIFICATE OF OFFICIAL REPORTER

13

14   CITY OF HAGATNA              )
                                  )  ss.
15   TERRITORY OF GUAM            )

16

17        I, Veronica F. Flores, Official Court Reporter for

18   the United States District Court of Guam, do hereby certify

19   the foregoing pages, 1 to 38, to be a true and correct

20   transcript of the proceedings held in the above-entitled

21   matter to the best of my ability.

22        Dated this 11th day of May 2020.

23

24                      /s/Veronica F. Flores
                        Veronica F. Flores
25